# Elwyn's Appeal.   Dallas's Estate.

1. The half-pay of an officer of the government is not liable to be taken by his creditors.

2. The pay having reached the beneficiary (a lunatic) and lost its distinctive character and being in the hands of his committee, as a distributable fund it is to be governed by the direction of the law.

3. A surplus of the pay not needed for the lunatic's subsistence may be applied with the sanction of the court for the payment of his debts.

4. His pay in the future could not be assigned by him if sane, nor intercepted by creditors.

5. In the distribution of such fund in the hands of the committee, it is not liable to the claim of the $300 exemption against creditors.

January 17th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Philadelphia* in

the estate of F. G. Dallas, a lunatic: No. 230, to January Term 1871.

The appeal was by Alfred Elwyn, committee, &c., of the lunatic, from the decree of the court confirming the report of the auditor on the account of the committee.

The following facts found by the auditor were agreed by the parties to be correct:—

Alfred Elwyn, the appellant, is the committee of the estate of Francis G. Dallas, a lunatic.

On the 21st of May 1866, Olive M. Devoe, administratrix, &c., of Giles H. Devoe, obtained a judgment in the District Court against said Dallas (who appeared by his committee) for $1172.71, on a promissory note given by him before he became insane.

The account of the committee was filed in the Common Pleas, August 27th 1866. The lunatic is an officer in the navy, and is entitled to half-pay, $1000 per annum, while in the hospital for the insane, and has no other estate.

When the lunatic was first affected, it appeared he had a sister who was bedridden and helpless, and whom he had always maintained.

The court ordered an allowance of $20 per month, or $240 per annum, to be paid her by the committee.

The account as filed showed a balance of $248.97, in the hands of the committee after the payment of all sums due for boarding and clothing of the lunatic, and the allowance for the support of his sister to said date.

This balance was reduced by expenses of audit, &c., to $161.22, which the auditor awarded to Mrs. Devoe, the judgment-creditor.

Whether the said balance in the hands of the committee was liable to be applied towards the payment of the judgment is the only question raised by this appeal. It was composed of funds received from the half-pay, and there was no other estate.

The court confirmed the report, but delivered no opinion.

Elwyn appealed to the Supreme Court, and assigned for error: that the court erred in confirming the report of the auditor, awarding the balance, viz., $161.22, remaining in the hands of the committee, to the judgment-creditor of the lunatic.

*R. C. McMurtrie*, for appellant.—The points are, that the fund being the pay of an officer of the government is not liable to be taken by creditors, and that the party was entitled to $300 under the "exemption laws," being more than the balance. As to the 1st he cited Davis *v.* Duke of Marlborough, 1 Swanston 79; Flarty *v.* Odlum, 3 T. R. 681; Fenton *v.* Lowther, 1 Cox 315; McCarthy *v.* Goold, 1 Ball & Beatty 387; Stone *v.* Lidderdale, 2 Anstruther 533; Act of April 15th 1845, § 5, Pamph. L. 460,

[Elwyn's Appeal.]

Purd. 435, pl. 33. The court will not order money to a lunatic's creditors till his comfort is provided for.

*J. B. Gest*, for appellee.—The committee must apply the income to payment of the lunatic's debts (Act of June 13th 1836, § 20, Pamph. L. 596, Purd. 632, pl. 20) as they existed at the time of the inquisition: Wright's Appeal, 8 Barr 57; Yaple *v.* Titus, 5 Wright 195.

The opinion of the court was delivered, February 27th 1871, by

AGNEW, J.—We think this case is governed by the Act of 13th June 1836, relating to lunatics. The 20th and 21st sections direct that the committee shall have the management of the real and personal estate of the lunatic, and shall from time to time apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of himself and his family, and the education of his minor children; and if the income be not sufficient, shall under the directions of the court, apply so much of the principal of his personal estate as shall be necessary for the purpose. The distribution of the surplus of $161.22 therefore did no more than the law allows.

It may be admitted that the half-pay of an officer of the government is not liable to be taken by creditors under any form of process—by levy, sale, attachment or sequestration. The authorities cited are to this effect. Being intended as a means of subsistence, it will not be permitted to be diverted. Like the provision of a parent in the hands of a trustee for a minor or lunatic child, it cannot be intercepted by others. But when the half-pay has reached the beneficiary, and has lost its distinctive character, and when as money it is in a proper sense, as here, a distributable fund lying in the hands of the law, it is to be governed by the direction of the law. Consequently a surplus not needed for the prime purpose of subsistence (as is found here) may be applied with the sanction of the court, which has the custody of the lunatic, to the payment of his debts. There is nothing which would prevent the lunatic himself from so doing, were he in his sound mind. His future pay may not be alienated by assignment, as it certainly cannot be intercepted by creditors *in invitum*, but money in possession may be disposed of at his will. Why then should the court be disabled, after a sufficient provision made for him, from ordering payment of a surplus to a just debt? The sum allowed for the support of his sister, who is not of his family, but for whom he himself had provided, would be liable to a similar objection, and yet it was not excepted to by the committee. Of course we are to presume from the finding of the auditor and the approval of the court, that these sums were

17 P. F. SMITH—24

in excess of the provision necessary for the lunatic; otherwise the court looking to the source of the income as half-pay, and as a provision made by the *parens patriæ* for the officer's maintenance, would not allow its diversion to the prejudice of the lunatic. The same reasons dispose of the claim set up under the $300 law. The allowance to the creditor here is the act of the court by the hands of its committee; and not a seizure by adverse process. The decree of the Court of Common Pleas is affirmed and the costs ordered to be paid out of the estate.