## Southard's Estate

*G. Von Phul Jones*, for appellant.

*Keller H. Gilbert* and *William M. Boenning*, for Commonwealth.

Stearne, J., May 11, 1932.—This is an appeal by the mother and sole heir of a deceased World War veteran from the assessment and appraisement of direct inheritance tax upon a fund derived solely from United States compensation award to the soldier, occasioned by his permanent and total disability through war injuries. The disability was physical and mental. Because of the impaired mental condition a guardian of the soldier's estate was appointed by the common pleas court. The United States periodically paid compensation to the guardian for a period of years, and it was applied by the guardian for the support, maintenance and comfort of the soldier. A considerable sum of money accumulated in the hands of the guardian in excess of the amounts necessarily expended as stated above. The Commonwealth claims that this accumulated fund is taxable under the transfer inheritance tax laws of this Commonwealth.

A United States soldier in the World War automatically became entitled to the benefits and provisions of the Acts of Congress of September 2, 1914, August 11, 1916, March 3, 1917, June 12, 1917, October 6, 1917, and July 11, 1918, all referring to the Bureau of War Risk Insurance of the Treasury Department. These Acts of Congress were generally repealed and codified by the World War Veterans' Act of June 7, 1924, Chap. 320, 43 Stat. at L. 607. This act has been further amended and modified in more or less unimportant items which need not be considered in the present inquiry.

The declared intent of the congressional enactment was to provide a system for the relief of disabled soldiers and for the dependents of those who died as a result of disability. Under title two elaborate provisions are enacted defining precisely who is entitled to participate and in what amounts and under what circumstances. Title three relates to the privilege accorded a soldier in securing United States Government life insurance for not less than $1000 or more than $10,000, with detailed provisions as to the method of payment of premiums, naming of beneficiaries, payment of policies, conversions, etc.

The present decedent entered the military service of the United States on January 1, 1918, and applied for and was granted insurance in the sum of $10,000, and deductions were thereafter regularly made from his service pay until his disability occurred. Decedent was permanently and totally disabled from September 15, 1919, to the time of his death on November 11, 1930. At the time of his disability, under the act, he was entitled to receive $57.50 per month. His injuries were physical and mental, and he became a patient at the United States Veterans' Hospital at Philadelphia. Due to his mental incapacity, a guardian was appointed for his estate in the common pleas court.

During the soldier's lifetime the guardian collected the compensation, cared for the soldier, but the expenditures proved to be less than the compensation received. In consequence whereof a balance accumulated in the hands of the guardian, part of which was invested in mortgages. It became necessary to foreclose certain of the mortgages, and the guardian held the real estate, herein considered as personalty, as a result thereof.

An examination of the account of the administrator reveals a total receipt of funds from the guardian and the United States Government of

$10,316.26

In assessing tax the Commonwealth excluded from the above the following items appearing in the administrator's account:

| | | |
|---|---:|---:|
| Interest on deposits | $.46 | |
| Phila. County Commissioners on account of burial | 75.00 | |
| U. S. Veterans' Bureau on account of burial. | 135.00 | |
| Adjusted service compensation | 1,565.00 | |
| | | 1,775.46 |

Gross personal estate ........................ $8,540.80

Deductions were allowed for items of expense and administration as set forth in the administrator's account, including the difference in funeral bill and the sums contributed by U. S. Government and of this Commonwealth, totaling.................................. 1,232.04

Net personal estate.......................... $7,308.76

to which add the appraised value of the real estate, which said real estate as above was secured by foreclosures of mortgages thereon.............................. 5,430.09

Total estate................................. $12,738.85

which was assessed for taxation at the rate of two per cent., or $254.77, together with interest thereon at the rate earned, four per cent., since November 11, 1931, one year after the date of the soldier's death.

The Commonwealth, however, properly excluded the item of interest on deposit as such item manifestly accrued after the death; it likewise excluded the payments by the government and state on account of funeral expenses, because the soldier was not seized of this fund in his lifetime. And finally, Smith's Estate, 8 D. & C. 639, is authority for the exclusion of the item of $1565, the amount of the adjusted service compensation, which was received after the death of the soldier and formed no part of his estate at the time of his decease.

This brings squarely in issue the status of this fund as to its taxability by the Commonwealth for transfer inheritance tax.

Section twenty-two of the Act of Congress of June 7, 1924, 43 Stat. at L. 607, provides "that the compensation, insurance and maintenance and support allowance . . . shall not be assignable; shall not be subject to the claims of creditors . . . and shall be exempt from all taxation."

At first I was disposed to regard the fund in question as exempt from tax because of the provisions of the above act. It seemed repugnant to me to tax such a fund, particularly in the circumstances of this case. I have sought every avenue to escape the conclusion that it is so taxable. However, upon

subsequent reflection and after considerable research of the authorities in this and other jurisdictions, I have changed my original view and am now clear that the tax was properly assessed.

As I view the Act of Congress and the cases, it seems very clear that as respects compensation and insurance Congress had two principal objects in view:

1. To compensate the soldier in his lifetime for accident or injury while in the service.

2. To care for the soldier's designated beneficiaries after his death (where the soldier voluntarily acquired such an insurance policy).

This particular soldier possessed such an insurance policy. Upon the occurrence of his disability he was entitled to his compensation during his own life. Upon his death, his mother, his designated insurance beneficiary, was entitled to the benefits of his war risk insurance for the duration of her life. After the death of the mother, and through the soldier's estate, the unpaid portions of such insurance will be paid to the soldier's next of kin.

The taxable situation concerning the war risk insurance undoubtedly has confused the situation with respect to compensation. However, a study of the situation clarifies the subject. There can be no question since Wanzel's Estate, 295 Pa. 419, Fisher's Estate, 302 Pa. 516, and Neuburger's Estate, 16 D. & C. 455, that insurance funds payable to designated beneficiaries, and after their death to the soldier's next of kin or testamentary beneficiaries, are not taxable. The reason is plain. The Act of Congress exempts such fund until it is actually and completely paid into the hands of such insurance beneficiaries. It is to be observed, however, that when such beneficiary dies and any such fund forms part of the beneficiary's estate it is then taxable. See decisions by Lamorelle, P. J., in Estate of James A. Coll, O. C. Phila. Co., October Term, 1927, No. 3070, and in Estate of Sophia Hagele, O. C. Phila. Co., April Term, 1927, No. 1117, also an article, "War Risk Insurance and Compensation," published in The Legal Intelligencer of May 9, 1930, at page 517.

The reason for such ruling seems apparent. Designated and permitted beneficiaries are the objects of the benefits conferred by the insurance. Until the fund arrives in the hands of such object it is freed from all liability for taxes or attachment. When the fund finds its ultimate goal and is possessed by the beneficiary like any other property, the fund belongs solely and absolutely to such individual. It is for this fundamental reason that even though the fund may be earmarked, nevertheless, a devolution from the estate of a beneficiary renders the fund taxable as any other property is similarly taxable.

Concerning compensation contradistinguished from war risk insurance, it is the soldier himself, and no other, who is the object of the United States' beneficence. When the compensation reaches the soldier the intent and purpose of the Act of Congress becomes an accomplished fact.

While apparently there are no Pennsylvania cases which have directly decided the question at issue, the Civil War pension cases are peculiarly applicable. The Act of Congress of May 3, 1873, United States Revised Statutes, Sec. 4747, exempted "money due or to become due to any beneficiary" from attachment or execution, and provided that such pension money should "inure wholly to the benefit of such beneficiary." Very many situations arose with respect to the beneficiary's handling of these pension funds. The cases are reviewed in an exceptionally well-considered opinion by Judge Keller of the Superior Court in Pentz v. First National Bank, 75 Pa. Superior Ct. 1. It suffices to say that the decision in that case and in the cases reviewed was that once the beneficiary collected his check, the fund became his individual

754

property, and was free from all restrictions and stood upon the same footing as any other money belonging to the soldier. While there may be some conflict in various jurisdictions, the general rule, in both Federal and state courts, is that after the beneficiary receives his fund the exemption ceases: 25 C. J. 78; Rozelle *v.* Rhodes, 116 Pa. 129; Burtch *v.* Burtch, 14 Pa. C. C. 482; Aubrey *v.* McIntosh, 10 Pa. Superior Ct. 275; Sommers *v.* Howey, 4 Dist. R. 723.

In Elwyn's Appeal, 67 Pa. 367 (cited with approval in Com. *v.* Baum, 250 Pa. 469), while an army officer's pay was held exempt from attachment, yet, when such pay reached the hands of the beneficiary (in that case represented by a committee where the beneficiary was insane), it was held that such exemption ceases and the fund became liable for the beneficiary's debts.

The case of State *v.* Shawnee County, 132 Kan. 233, 294 Pac. 915, reviews the authorities and decides that when compensation is paid to a guardian of an insane soldier, the fund has passed from the government and is no longer exempt from taxation.

Upon a consideration of the foregoing authorities and for the reasons therein given, I have formed the opinion that this fund has been legally assessed and is liable for Pennsylvania transfer inheritance tax.

While I have been reluctant to permit this tax assessment, nevertheless, the result is not altogether to be regretted upon the ground of any possible injustice to the exceptant, the mother of the soldier. It is to be remembered that the United States Government has paid on account of this soldier $18,721.43, and, in addition thereto, the mother has received and is still receiving the benefit of the $10,000 war risk insurance policy, and after the mother's death the remaining part of the $10,000 fund will be payable to the soldier's heirs and next of kin under our intestate law. It is doubtful whether any other government in the world provides so generously for its soldiers. This Commonwealth has provided police, fire and other municipal protection to its citizens, including this soldier and his mother, and in justice and right, in the circumstances, is obliged to assess and collect all taxes legally due and payable to it. I, therefore, make the following

*Decree*

And now, May 11, 1932, the appeal is dismissed and the action of the register upheld.