## Yoder's Estate.

Argued January 13, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Robert G. Hendricks,* with him *E. A. DeLaney,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

No appearance was made nor brief filed for appellee.

OPINION BY MR. JUSTICE PARKER, March 24, 1941:

The question involved in this appeal is whether a court of common pleas has the power to direct the guardian of

a weakminded person to retain part of the ward's estate for future burial expenses and emergencies, instead of applying it on a continuing claim by the Commonwealth for support and maintenance in a state institution.

John D. Yoder has been confined in the Norristown State Hospital since August 14, 1929. Pursuant to the provisions of the Act of May 28, 1907, P. L. 292, § 1, as amended (50 PS § 941), he was adjudged in 1933 to be so weak of mind that he was unable to take care of his property and Union National Bank and Trust Company of Souderton was appointed his guardian.

On December 15, 1939, the Commonwealth presented a petition to the Court of Common Pleas of Bucks County, of which court Yoder was a ward and of which county he had been a resident, alleging that Yoder was then and for a long period had been a patient in the Norristown State Hospital and was indebted to the Commonwealth for his support and maintenance to September 30, 1939, in the sum of $1,983.73, and praying that an order be made upon the guardian requiring it to pay that sum to the Commonwealth and to continue to pay for his maintenance and care from September 30, 1939, until further order of the court. A rule to show cause issued and the guardian answered that it had cash and securities in its hands in the amount of $2,628.79 and asked that it be allowed to keep in its hands $605.64 for funeral expenses, tombstone, attorney fees, guardian's commission and court costs. The Commonwealth conceded that the guardian was entitled to set aside $255.64 for commissions, attorney fees and court costs.

The court below, after argument, made an order directing that $1,983.73 be paid to the Commonwealth for cost of maintenance to September 30, 1939, that future payments by the guardian for the maintenance and care of Yoder in said hospital be suspended, and that the balance, $605.04, remaining after the payment of the Commonwealth's claim, be retained until further order of that court as a reserve fund for the payment of the neces-

sary funeral expenses, attorney fees, and other costs of administration. In an opinion filed, the court indicated that $250 would be a proper sum to allow for burial expenses, including a tombstone or marker, that administration expenses to date were $255.64, and that the balance would be a proper sum to be retained by the guardian until the death or recovery of the ward to take care of any emergencies or possible future expenses of administration that might arise. From this order the Commonwealth has appealed. While there are some slight discrepancies in the court's calculations and figures which may be corrected, the effect of the order was to deny the Commonwealth's claim for compensation after September 30, 1939, and to leave a fund of $389.42 in the hands of the guardian, exclusive of costs of administration, which balance the court withheld to cover burial and other future emergencies.

The Act of June 1, 1915, P. L. 661, § 1, as amended (71 PS § 1781, et seq.), provides that when any person is maintained as an inmate of any hospital of the Commonwealth, in whole or in part at the expense of the Commonwealth, "the property or estate of such person shall be liable for such maintenance," and the court of common pleas of the county of the residence of any inmate is given jurisdiction to make an order for the payment of maintenance to the Commonwealth by the trustee, guardian, or other person who has charge of the estate of such inmate. Such claims of the Commonwealth in distribution of an estate of any person so maintained are to be paid after other claims which by law are now given precedence, but before claims of general creditors (§ 6; 71 PS § 1786). Also, see §§ 504 and 505 of the Mental Health Act of 1923, as amended (50 PS §§ 144, 145). Even prior to the Act of June 1, 1915, the amount expended by the state for the support and maintenance of a lunatic was not regarded as a mere gratuity. "The law implies an obligation on the part of a lunatic or his estate to reimburse those who have supplied his

necessities": *Arnold's Estate,* 253 Pa. 517, 520, 98 A. 701. Also, see *In re Frank Hoffmann,* 258 Pa. 343, 101 A. 1052.

Although the suggestion that there should be reserved from the estate of an unfortunate sufficient to bury him and to avoid giving him a pauper's burial makes a strong appeal to human sympathy, there is no warrant in the law for such an exemption. Here, there is a debt due the Commonwealth for necessities and there are no other present claims against the estate of the weakminded person except expenses of administration. Those expenses, of course, come first, as was conceded by the Commonwealth, and the court below properly directed that they should be first paid. There exists not only a common law liability but a statutory requirement that the Commonwealth's claim be paid when there are not other valid existing claims entitled to preference. In this respect no discretion was lodged in the court and the Commonwealth's claim must be paid if there are funds available. The discretion which is lodged in the court of common pleas by the Act of 1915, as well as by the Mental Health Act, has special reference to a discretion to be exercised with relation to the proportion which certain near relatives may be required to pay for the support of an indigent patient and as to how such liability shall be distributed among them. The general equitable powers inherent in the courts do not permit us to disregard the plain mandate of the Legislature.

To set aside a fund to meet future burial expenses and other emergencies would, in effect, amount to the granting of an exemption. Exemptions are in derogation of the usual course of the law and must be specially allowed by statute. We have heretofore held that the $300 exemption allowed by Act of April 9, 1849, P. L. 533 (12 PS § 2161), is not available to a guardian of a lunatic on a distribution of funds in the hands of a committee: *Elwyn's Appeal,* 67 Pa. 367. We note the further fact that the legislature has provided by the Act of June 24,

1937, P. L. 2017, art. IV, § 403 (62 PS § 2303), that the local authorities shall be liable for the burial expenses of certain paupers. To sustain the action of the court below would be to shift this responsibility from the county to the Commonwealth.

The Commonwealth is entitled to receive the cost of maintenance of this ward while he remains an inmate of a state institution. and until the funds of the estate are exhausted. The funds in the hands of the guardian not having been converted into cash nor an account filed showing the precise administration expense to date, it may be necessary to direct the filing of an account before a further order is made.

The order of the court below is reversed and the record is remitted for further proceedings consistent with this opinion, the costs of the appeal to be paid from the estate of the weakminded person.