## Fantini's Estates

Before Stearne, Sinkler, Klein, Bolger and Ladner, JJ.

*Robert B. Wood*, for exceptant.

*Cohan & Schumacker*, contra.

BOLGER, J., April 10, 1942.—We are in effect requested to review our decision in Heller's Estate, 22 D. & C. 649, which was followed by the auditing judge. That case decided that a minor's estate is not liable for minor's deceased parent's funeral expenses. Incidentally, the cited case has been similarly regarded as binding authority in numerous other unreported adjudications as well as decrees of this court.

There is little which can be added with benefit to the thorough study of the facts and review of the law con-

tained in the adjudication. However, certain salient elements present themselves as governing the case which will be stated if only for emphasis, and at the risk of being repetitious.

The funeral bill as a debt of the decedent's estate was expressly excluded from participating in the fund now before the court when decedent died, by the provisions of the Acts of April 15, 1868, P. L. 103, and of June 28, 1923, P. L. 884, which exempt insurance on a deceased's life payable to "wife or child. . . ." This legislation definitely governs this case. To hold otherwise would be doing indirectly what cannot be done directly. In other words, the fund now before the court was exempt by the acts of assembly from the debts of these minors' father's estate. It follows, therefore, that it continues to be exempt in the hands of the minors' guardian from such debts. From this expression of the legislature as well as that contained in The Support Law of June 24, 1937, P. L. 2045, it appears that that body is more solicitous about the care and maintenance of minor children than it is about the disposal of the remains of the deceased parents of such children.

The Superior Court has flatly ruled in support of the decision of the auditing judge in the cited case of Sibilia's Estate, 82 Pa. Superior Ct. 67. There a claim for a share of burial expenses and expenses of last illness of a deceased father from a minor child's estate arising from damages for the father's death was denied. The court said (p. 72):

"No authority has been brought to our attention which supports the doctrine that a minor child is liable for the debts of her deceased father. It is very clear that general creditors of the decedent could have no claim arising as did this and no convincing reason is suggested why the bills incurred at the hospital are in a different category from other liabilities of the decedent."

The court's observation that Bair v. Robinson et ux.,

108 Pa. 247 (which case is relied upon, inter alia, by exceptant), rested upon an implied contract and had no application, is apposite and supports the view of the guardian ad litem herein.

In Yoder's Estate, 341 Pa. 81, we obtain a glimpse of how our highest appellate court regarded a question intimately related to the instant case. There the Commonwealth of Pennsylvania in enforcing its statutory rights, as well as those at common law, against the estate of a living incompetent for support in a State institution, appealed from the action of the lower court in exempting from the fund a sum for anticipated burial expenses. The Supreme Court in reversing this decision said (p. 84):

"Although the suggestion that there should be reserved from the estate of an unfortunate sufficient to bury him and to avoid giving him a pauper's burial makes a strong appeal to human sympathy, there is no warrant in the law for such an exemption. . . . In this respect no discretion was lodged in the court and the Commonwealth's claim must be paid if there are funds available".

In pointing out that, to deduct the sum requested, the Commonwealth would be saddled with the obligation of the local authorities imposed by statute (County Institution District Law of June 24, 1937, P. L. 2017, art. IV, sec. 403) to bury the incompetent when he died, the action of the Supreme Court might infer that the existence of this man's estate would not necessarily prevent his remains from being buried at death in a Potter's field, but also that his remains might be turned over to the State Anatomical Board for delivery to the department of anatomy of some medical or surgical institution, provided no one claimed the body under our health and safety legislation. The highest court no doubt felt that it could not give effect to its recognition of the sense of decency and humanitarianism it felt because of the absence of appropriate legislation.

We desire to add two ideas to support the auditing judge's view that the correction of the social wrong involved in this line of case lies solely with the legislature. First is the confusion and lack of logic in the lower court cases cited for the contrary conclusion. The sentiment permeating the question brings it within the category of "hard cases" and therefore the red flag of possibly applying "bad law" is ever present. In attempting a solution of this problem, one is at first tempted to approach it from the standpoint of sui generis. But the more one examines the relevant cases and weighs the many elements involved, the more one is convinced that, so far as case law is concerned, the solution lies in the application of a fixed rule or principle of law. Varying circumstances appeal to different courts resulting in varying conclusions. Whether or not the fund before the court had its origin in the death of the deceased parent may appeal to some as a determining factor; the size of the fund and the relative reasonableness of the charge may appeal to others. But it is our conviction that while we may appear unduly severe we are at least consistent, while the other courts find they have opened a door which they must realize must be closed, but they are at a loss where to close it, and appear inconsistent and illogical in attempting to do so. For instance, if funeral expenses are allowed, why not those of last illness which are on an equal basis of priority; also why not medical expenses of a parent even though they be not of the last illness, because a live parent most frequently is of more use to a child than a dead one, and so on ad infinitum. Therefore, we believe the interposition of the legislature is a most salutary need.

Reference to existing legislation on related social relations is of like interest. The Support Law of June 24, 1937, P. L. 2045, renders the husband, wife, child, father, mother, grandparent, and grandchild of every indigent person, of financial ability, liable to care for and maintain or financially assist such indigent person.

This act is of broad import and creates new obligations. In other words, courts in many instances were powerless prior to its enactment to correct the many social wrongs corrected by its provisions. Now they can do so. The absence from the act of a requirement for a child to pay for the funeral expenses of its deceased parent is unfortunate for petitioner, but may be significant of the fact that the legislature did not desire to go that far. This court, however, is not the tribunal to fill the void—that is the legislature's province.

The exceptions are dismissed and the adjudication is confirmed absolutely.

KLEIN, J., dissenting.—I dissent. In my opinion, public policy and common decency require us to regard the costs of a modest funeral of an indigent parent as a necessity, payable out of a minor child's estate, when no other person or fund is available for payment of the undertaker's bill. Each case should be considered as sui generis and decided on its own facts. I regard the adoption of a rigid rule that the funeral bill can, under no circumstances, be charged to the minors as harsh and unjust. If, for example, an indigent parent had a paid-up insurance policy on his life for a million dollars, or if a large fortune should vest in his children upon his death, I certainly think it would be unfair to bury such a parent as a pauper in Potter's field at the expense of the public or to deliver his body to a medical school or other scientific institution for dissection. However, great caution should be exercised in permitting such charges to be made against the minors' estate, and the court must make certain that the funeral bill is reasonable and not collectible from any other source.

In the instant case I would direct payment of the funeral bill out of the estate of the minor children, as it is admitted that the undertaker's bill is fair and reasonable and it is apparent that there is no other person to whom the undertaker can look for payment. This

conclusion seems to me to be especially appropriate under the circumstances of this case, since the record strongly indicates that the payment of the death benefit should have been made to the estate of the deceased parent and not to the guardian of the children's estate.