## Commonwealth v. Montgomery Trust Company, Trustee

*Paul P. Wisler*, for plaintiff.

*Julian W. Barnard*, for defendant.

KNIGHT, P. J., March 3, 1943.—The Pennsylvania Department of Revenue filed its petition for an order upon the Montgomery Trust Company, trustee under the will of Ephraim Keyser, for past, present, and future maintenance of Elsie Hoepfl (a beneficiary of a trust under said will), who is confined in the Norristown State Hospital. An answer was filed by the trustee, and the case was argued before the court en banc. The facts, as they appear in the petition and answer (no depositions having been taken), are as follows:

Ephraim Keyser died on July 11, 1930, leaving a will, subsequently probated, by which he gave to his daughter Elsie Hoepfl a one-ninth share of the residue of his estate, and providing further:

"Third. The shares of my daughters, Sallie and Elsie, shall be placed in the Montgomery Trust Company, which I appoint as trustee for them, during their lifetime; they to receive the interest of their respective

shares at regular intervals and of the principal if necessary by reason of sickness. The balance to be divided among their respective issue, or among my other children or their issue, if no issue survives or is left."

Elsie Hoepfl was admitted to the Norristown State Hospital in January 1930 (prior to testator's death) and has as guardian of her estate the Norristown-Penn Trust Company.

As of March 31, 1942, the Commonwealth had expended the sum of $2,519.62 for the support and maintenance of Elsie Hoepfl in the State hospital, and from April 1, 1942, on further sums will accrue. Its claim is based on section 4 of the Act of June 1, 1915, P. L. 661, as amended by the Act of April 25, 1929, P. L. 704, which provides, in part:

"The court of common pleas of the county of the residence of any inmate of a State-owned mental hospital, or any . . . other institution wherein said inmate is maintained in part by the Commonwealth of Pennsylvania, shall, upon the application of the Department of Justice, acting on behalf of the Department of Revenue, make an order for the payment of maintenance to the Commonwealth, upon the trustee, committee, guardian, or other person who has charge of the estate of any such inmate . . ."

The trustee objects to the petition on the grounds that:

1. The principal of the trust does not constitute an estate belonging to the inmate within the meaning of the act;

2. The jurisdiction over this testamentary trust should lie in the orphans' court, from which court the trustee will be entitled to receive its discharge upon the completion of its duties;

3. The language of the will must have meant an "illness" other than that requiring the confinement of the beneficiary in a State hospital, as she had been so

confined for at least six months prior to the death of the testator; and

4. Remaindermen or possible unborn interests should be represented.

Taking up these objections in order, it seems clear that the courts have always considered such trust funds the "estate" of the beneficiary in applying the provisions of the Act of 1915, supra. Orders have been made in exactly similar cases, and in cases where the trustee has been vested with discretion to make payments from principal; and even when the will contained spendthrift provisions: Walters' Case, 278 Pa. 421 (1924). There the court held that there is an implied contract to repay a sum expended for support by the State, that the trustee's discretion is only a legal one, and that whenever the law determines that a trustee's discretion should be exercised in a particular way he will be constrained to act in accordance therewith. See also Cronin's Case, 326 Pa. 343 (1937), and Hohenshieldt's Estate, 105 Pa. Superior Ct. 18 (1932).

In none of the cases examined does it appear that it was contended that the Act of 1915 did not confer a new jurisdiction upon the court of common pleas. The act is certainly specific in its language, and if the Commonwealth chooses the court of common pleas in which to apply we do not feel that it would be proper to insist that the claim be presented originally in the orphans' court. In the view we take of this case, this court can adjudicate the claims and declare the debt due, and the orphans' court, upon the audit of the trustee's accounts, can make suitable provision for payment, after allowance of necessary commissions, fees, and expenses. We do agree that the trustee is entitled to have the orphans' court pass upon its administration of the trust.

The third objection, that this was not such an "illness" as was contemplated by the testator, is without merit. The trustee argues that the will speaks as of

the date of decedent's death, when the beneficiary was already confined. It may just as appropriately be argued that the will was written before such confinement, and the testator may have contemplated such an "illness".

The last objection, that remaindermen and possible unborn interests are not parties, cannot be sustained. When the trustee has the power (presumably with the exercise of its discretion), the law says how that discretion must be exercised, as was pointed out in Walters' Case, supra.

As the accumulated indebtedness as of March 31, 1942, is much greater than the amount of principal and income in the hands of the trustee, we do not feel it necessary to deal with the amounts accruing thereafter.

We are of the opinion that it was not necessary to obtain an order in this court, but an award could have been made in the orphans' court, in which court defendant could have been cited to file an account by plaintiff: Harnish's Estate, 268 Pa. 128; Geisler's Estate, 76 Pa. Superior Ct. 560. We are, however, of the opinion that under the Act of 1915, supra, this court has jurisdiction to adjudge the amount due the Commonwealth, and also the liability of the defendant. This is all we propose to do, and further proceedings to collect the amount must be taken in the orphans' court.

And now, March 3, 1943, for the reasons given in the foregoing opinion, it is ordered, adjudged, and decreed as follows:

The prayer of the petition is granted, and it is adjudged that Montgomery Trust Company, as trustee for Elsie Hoepfl, under the will of Ephraim Keyser, deceased, is indebted to the Pennsylvania Department of Revenue in the sum of $2,519.62, as of March 31, 1942, for maintenance and support advanced by the Commonwealth for the benefit of the said Elsie Hoepfl while confined in the Norristown State Hospital.

*Petition for leave to intervene and
for reargument*

KNIGHT, P. J., September 21, 1943.—On October 26, 1942, the Department of Revenue of the Commonwealth presented a petition under the provisions of the Act of June 1, 1915, P. L. 661, as amended, praying this court to make an order on the Montgomery Trust Company, trustee for Elsie Hoepfl under the will of Ephraim Keyser, deceased, for the past, present, and future maintenance of the said Elsie Hoepfl as a patient in the Norristown State Hospital.

On March 3, 1943, this court entered a decree upon said petition, in which it was adjudged that the Montgomery Trust Company, trustee as aforesaid, is indebted to the Pennsylvania Department of Revenue in the sum of $2,519.62, as of March 31, 1942, for the maintenance and support of Elsie Hoepfl in the Norristown State Hospital. After the filing of this decree, the Montgomery Trust Company, trustee as aforesaid, filed its first and final account in the Orphans' Court of Montgomery County.

In connection with the adjudication of the account by the orphans' court, S. Thomas Bulfamonte was appointed trustee ad litem for all possible beneficiaries or remaindermen under the terms of the trust and under the law. Mr. Bulfamonte as trustee ad litem then presented this petition, praying that he be allowed to intervene in the above-captioned matter as a party, and that our decree of March 3, 1943, be reconsidered by this court en banc.

As Mr. Bulfamonte has raised a question that was not raised or considered by the court in entering its decree of March 3, 1943, we all think the case should be reargued. We have been informed, however, that our decree and judgment of March 3, 1943, has been appealed to the Supreme Court, and therefore the record has been removed from this court, and we may not now

reconsider it. Mr. Bulfamonte informed the court that this appeal to the Supreme Court would be withdrawn; hence this order.

And now, September 21, 1943, if and when the appeal from our decree and judgment entered March 3, 1943, in the above matter is withdrawn, the case is ordered again on the argument list. Counsel will notify the prothonotary when the appeal is withdrawn.

### Application for order of payment of maintenance

KNIGHT, P. J., December 6, 1943.—On October 26, 1942, the Department of Revenue of the Commonwealth of Pennsylvania filed its petition under the Act of June 1, 1915, P. L. 661, praying for an order on Montgomery Trust Company, trustee for Elsie Hoepfl under the will of Ephraim Keyser, deceased, to pay over certain trust funds to the department to reimburse the Commonwealth for moneys expended for the maintenance of Elsie Hoepfl in the Norristown State Hospital. On March 3, 1943, this court adjudged that the sum of $2,519.62 was due the Commonwealth from the Montgomery Trust Company, trustee as aforesaid.

The trust company then filed its account of the trust in the orphans' court of this county. In the course of the adjudication of the estate, the orphans' court appointed S. Thomas Bulfamonte as trustee ad litem for all interested unborn and/or unascertained persons.

On May 2, 1943, Mr. Bulfamonte, as trustee aforesaid, presented his petition for leave to intervene in the case in this court, praying for a rule to show cause why the case should not be reargued. The rule was allowed and made absolute.

At the reargument it appeared that our order of March 3, 1943, had been appealed to the Supreme Court, and this court, taking the view that the record had been removed to the Supreme Court, refused to hear reargument while the appeal was pending.

On October 15, 1943, a certificate of discontinuance of the appeal in the Supreme Court was filed, whereupon the case was placed on our argument list for November 29th and heard. (For a recital of the facts in greater detail, see our opinions filed March 3, 1943, and September 21, 1943, appearing supra.)

The intervening trustee raises two questions, which were not considered by the court when the case was here before:

1. Can the Department of Revenue recover for past maintenance of an insane inmate of a State hospital?

2. Can such recovery be had on a rule for an order and without a jury trial?

The intervening trustee contends that both of these questions should be answered in the negative and our decision of March 3, 1943, reversed. The intervening trustee relies mainly upon our decision in In re Henning, 53 Montg. 207.

We have examined the original papers in that case, and we find that nowhere in the record is the Act of 1915 mentioned, and the case was evidently decided without reference to or consideration of this act. There is an important distinction to be made between the Henning case and the case at bar; in the former, the father of the incompetent person was sought to be charged with the amount due for back support of his daughter, while in the present case the Commonwealth seeks to recover from the property of the one who received the benefit, Elsie Hoepfl.

When an attempt is made to collect past maintenance for an insane person from a relative liable for the support of said person, we are of the opinion that the Henning case is still good law. It has never been questioned, however, that the Commonwealth has the right to recover from the property of an insane person moneys advanced for the maintenance of said insane person in a State institution. Particularly is this so since the Act of 1915: Directors of the Poor of Montgomery County v. Nyce, Committee, 161 Pa. 82; Commonwealth v.

Baum, 250 Pa. 469; In re Hoffmann, 258 Pa. 343; Arnold's Estate, 253 Pa. 517; Walters' Case, 278 Pa. 421.

The first question raised by the intervening trustee must be decided against his contention.

In considering the second question, we will first turn our attention to the procedure. It is true that in the Henning case we held, citing Short v. Upper Moreland Township School District, 108 Pa. Superior Ct. 503, that a rule is not original process but, as we have pointed out, the Henning case was decided without reference to the Act of 1915, and it is apparent that the act was not discovered by the court nor was it called to our attention. A rule is not original process, but it can be made original process by the legislature. Section 4 of the Act of 1915, as amended, provides:

"The court of common pleas of the county of the residence of any inmate of a State-owned mental hospital, or any home, hospital, asylum, or other institution wherein said inmate is maintained in part by the Commonwealth of Pennsylvania, shall, upon the application of the Department of Justice, acting on behalf of the Department of Revenue, make an order for the payment of maintenance to the Commonwealth, upon the trustee, committee, guardian, or other person who has charge of the estate of any such inmate. . ."

An order, such as is contemplated by this section, is preceded by a rule, or citation, so that the parties affected may have an opportunity to appear and answer.

In all the cases we have examined arising under the Act of 1915, the proceedings have been instituted by rule, and this practice has never been questioned. We are of the opinion that the Act of 1915 is ample authority for the issuance of a rule in this case. Insofar as the Henning case holds to the contrary, it must be considered as overruled.

It is further contended that the Act of 1915, supra, is unconstitutional, as depriving the trustee of trial by

jury. This act has been before our appellate courts many times, and its constitutionality has never been questioned on the ground that it took away the right of trial by jury. It seems almost inconceivable that this question would not have been raised and discussed if there were any merit in it.

The trustee here could have had a jury trial if he had demanded it: Commonwealth ex rel. v. Dewalt, 67 Pitts. L. J. 59. But of what avail would a jury trial be, for all the facts are admitted, and a jury trial could only result in a directed verdict for the Commonwealth.

The question now before us was raised in the case of In re Duerr, 25 Dist. R. 406 (1916), and was disposed of by President Judge J. Willis Martin, of C. P. No. 5 of Philadelphia County, in a well-considered opinion. We do not think we could with profit add anything to what Judge Martin has so well said.

In Commonwealth v. Tarras, 89 Pitts. L. J. 285 (1940), cited by the intervening trustee, it was held that assumpsit was not the proper procedure to enforce liability under the Act of 1915. That case also holds that the word "maintenance" in the act means current maintenance or current support when applied to a relative of the incompetent person. This is in accord with several decisions of this court.

In Commonwealth v. Baum, 250 Pa. 469, the matter came before the court below on a case stated, and judgment was entered for defendant because the fund there sought by the Commonwealth did not exceed the $300 exemption allowed by law to defendant. In setting this judgment aside, the Supreme Court said (page 471):

"Whether the Commonwealth is entitled to the fund in the hands of the appellee, or a portion of it, in part payment of its concededly just claim for the maintenance of the appellee's ward, will be a matter for the court below upon the petition of the Commonwealth for an order on the committee to pay what he has in his hands. The question irregularly raised by this pro-

ceeding can then be orderly disposed of: Elwyn's Appeal, 67 Pa. 367."

This is high authority for the regularity of the present proceeding. The cases cited in the Henning opinion, holding that defendant had a right to a jury trial when sought to be charged with back support of an indigent relative, were all instituted in the quarter sessions court under other acts of assembly. None of them involved the Act of 1915 nor did any of them involve the estate of an incompetent. This is an equitable proceeding and as such there is no constitutional right of jury trial.

And now, December 6, 1943, the order of the court made in this case on March 3, 1943, is reaffirmed.