## In re Betz

· *Harry Polish,* for Commonwealth.
*Joseph T. Coghlan, Jr.,* for City of Philadelphia.
*Joseph B. Quinn,* for guardian.

ALESSANDRONI, J., December 18, 1944.—Maurice G. A. Betz, an incompetent, has been a patient at Wernersville State Hospital, a State institution, since August 7, 1897. Prior to his admission to the hospital he had been a resident of Philadelphia; hence this county paid part of the cost of his maintenance and the Commonwealth paid the balance.

On May 28, 1917, the Liberty Title & Trust Company was appointed guardian of his estate. The first and final account, now before the court for audit, shows a balance of $875.53. The Commonwealth and the county have, respectively, presented claims in the sum of $5,229.11 and $3,361.68, representing payments made by each for the maintenance of the incompetent. The claim of the county represents the total expendi-

tures made by it prior to June 30, 1929; the claim of the Commonwealth represents the expenditure of $7,586.49 to August 31, 1943, less the sum of $2,357.38 received by it from the estate. The learned auditing judge ordered that the balance in the hands of the guardian, together with the sum heretofore collected by the Commonwealth, shall be paid pro rata to the Commonwealth and the county in the proportions of the amounts of maintenance legally recoverable by each, in accordance with section 7 of the Act of June 1, 1915, P. L. 661, 71 PS §1787.

The Commonwealth, by its exceptions to the adjudication, asserts that the proper construction of that act requires a division between the Commonwealth and the county of the sum of $875.53 only, distributed pro rata on the basis of the net balances of their respective claims, without regard to the fact that the Commonwealth has heretofore collected the sum of $2,357.38.

### Discussion

The precise question presented by these claims has apparently not been raised hitherto. Both parties concede that the applicable statute is section 7 of the Act of June 1, 1915, P. L. 661, 71 PS §1787, which provides:

"Where there is a claim against the estate of any person maintained in any home, hospital, asylum, or other institution, both on behalf of the Commonwealth and on behalf of any county or poor district, and there is not sufficient in the estate to pay the claim in full, the same shall be paid pro rata to the State and the county, in the proportion of the amount of maintenance legally recoverable by each."

In the matter of In re Hoffman, 258 Pa. 343 (1917), the same type of factual question was presented but its determination was there avoided by the action of the Commonwealth. In that case the poor district had collected all but $37.25 of its contribution toward the maintenance of the ward. The balance in the hands of

the guardian was $861.88 and the Commonwealth claimed the sum of $1,092.07 for his support. The Commonwealth, resisting the claim asserted by the poor district under the Act of June 13, 1836, P. L. 539, sec. 33, and the Act of May 24, 1887, P. L. 202, sec. 1, for the entire fund, consented to the payment in full of the sum of $37.25 to the poor district. The entire balance was then awarded to the Commonwealth. The Supreme Court, however, alluding to the Act of 1915, supra, declared (p. 346):

"In fact, the poor district in this case has no cause to complain, as payment in full has been made of its claim by consent of the Commonwealth, whereas, under section seven, it is entitled to share only pro rata in the fund."

The dictum, however, leaves open the basis upon which the poor district and the Commonwealth would have shared; whether on the basis of the total sums expended or on the basis of the unpaid balances due each, without regard to the moneys received prior thereto by either.

The antecedent history of this legislation is of some help in its interpretation. The maintenance of a lunatic is not a gratuity. On the part of the Commonwealth, it is the discharge of a governmental function and the law imposes an obligation for reimbursement irrespective of statutory enactment: Reiver's Estate, 343 Pa. 137 (1941); Yoder's Estate, 341 Pa. 81 (1941); Repsher's Estate, 24 Dist. R. 15 (1915). As to the county or poor district, also, although the payments are made pursuant to legislative enactment (see Act of May 5, 1876, P. L. 121), they are still made in the discharge of a governmental function and the attributes of sovereignty thereby attach to it: Erny's Estate, 337 Pa. 542 (1940).

At common law, in the absence of a self-imposed limitation, the Commonwealth was entitled to priority of payment for a debt or liability due it: South Phila-

delphia State Bank's Insolvency, 295 Pa. 433 (1929) ; Booth & Flinn, Ltd., v. Miller, 237 Pa. 297 (1912). Such right of priority in the case of the estate of an insolvent ward, however, had been relinquished by the Commonwealth by the Act of April 19, 1794, 3 Sm. L. 143, whereby the claim of the Commonwealth was reduced to a subordinate status. Prior to the Act of 1915, counties and poor districts, however, enjoyed the right to collect not only the amount of their claims, but also the entire estate of the ward so that the funds might be applied for his maintenance, and, upon his death, the balance, if any, was to be turned over to his representatives: In re Hoffmann, supra.

The Act of 1915 vested in the Commonwealth the right to collect against persons other than the inmate: Boles' Estate, 316 Pa. 179 (1934). By section 6, it also vested a preferred status to the claim 71 PS §1786 and, where there was a claim both by the Commonwealth and a county or poor district, it provided that the estate of the ward "shall be paid pro rata to the State and the county. . . ."

The priority status enjoyed by the Commonwealth in the case of a deceased lunatic, however, was of short duration; by section 13 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, the claim of the Commonwealth was again made subordinate to all other debts of the decedent, including the claim of the county for the maintenance of the deceased lunatic: Metcalf's Estate, 319 Pa. 28 (1935). This change in the law, however, did not disturb the priority of a claim by the Commonwealth or the equality of status, as between the Commonwealth and the county, in the case of a living lunatic.

The legislation subsequent to the Act of 1915 is reviewed in Morris Estate, 347 Pa. 233 (1943). By the Act of April 25, 1929, P. L. 707, 50 PS §624, the Department of Revenue became the sole collecting agency to recover the cost of maintenance for the Common-

wealth and a county. Under that act and its amendments, the county is entitled to one half of the moneys so collected. Thus the reward for diligence, which is now asserted by the Commonwealth as its right under the Act of 1915 and is the basis for claiming that it is under no duty to give credit for the sums heretofore collected by it, was obviated. The Commonwealth collects all sums and credits the county with its share. No claim or controversy therefore exists in the present matter as to any sums expended or collected subsequent to June 1, 1929.

Although we are not in accord with parts of the opinion of the learned auditing judge, and hence must sustain certain of the exceptions filed thereto, we agree with the conclusion he reached.

The significant phrase of the Act of 1915 upon which the Commonwealth and the county's pro rata distribution must be determined is "the amount of maintenance legally recoverable by each". The contention of the Commonwealth would have the effect of substituting the words "due and unpaid" for "legally recoverable". Such substitution we think totally unwarranted both in the light of the unambiguous meaning of the words used in the statute and the antecedent legislative history.

It is true that by virtue of its sovereignty the Commonwealth had the common-law right to absolute priority and preference in recovering the amount expended by it. However, since the county is rendering a like service and also in its governmental capacity, logic would dictate that the Commonwealth and the county be upon an equal plane in this regard. Nevertheless, it has been the consistent legislative policy of this Commonwealth to subordinate the claim of the Commonwealth and to prefer the claim of the county. The ancient common-law right of priority in the Commonwealth was restored by the Act of 1915 as to all save a county or poor district and thereafter, as to decedents'

estates, was promptly relinquished by the Fiduciaries Act of 1917. With regard to counties and poor districts, however, in the case of living incompetents, the Act of 1915, as we construe it, recognized the logical equality as between these instrumentalities in performing a governmental function and placed them on a common level in recovering from the estate of an incompetent. To this extent the claim of the Commonwealth was thereby elevated to the level of priority previously enjoyed by the counties alone.

The Act of 1929, whereby the Commonwealth alone was authorized to collect from the estate of an incompetent, and thereafter credit the county or poor district with its share for maintenance, provided a simplified method of procedure to accomplish the objectives of the Act of 1915.

To permit the Commonwealth to withhold the moneys heretofore received by it and share in the balance would be contrary to the manifest intention of the legislative enactment and contrary to the language of the statute. The words "legally recoverable" have a meaning far beyond "due and unpaid". The word " recoverable" has been variously defined, including inter alia, "susceptible of being gotten back or regained": 54 C. J. p. 657. While the statute speaks of the "claim" of the Commonwealth and the county, the direction that they shall be paid "pro rata" introduces the equitable concept which prompted the learned auditing judge to reach the conclusion he expressed, and which would be wholly defeated by the assertion of the Commonwealth. This is especially persuasive in the light of the fact that, prior to 1929, both the Commonwealth and the county independently proceeded on their respective claims.

We conclude that the proper disposition of these claims is to consider them as follows: The Commonwealth has a total claim of $7,586.49 to August 31, 1943, to which amount the county has contributed the sum of $1,764 to May 31, 1941, leaving a net recoverable expenditure by the Commonwealth of

$5,822.49. The county has a claim of $3,361.68 to July 1, 1929, and, in addition has contributed the sum of $1,764 to May 31, 1941, or a total recoverable expenditure of $5,125.68. The Commonwealth has heretofore collected the sum of $2,357.38, of which amount $554.67 was credited to the county in accordance with the Act of May 23, 1933, P. L. 975, 50 PS §624. Reducing the recoverable expenditures and the receipts of the county and Commonwealth, respectively, each by the sum of $554.67, we have a net recoverable balance due the Commonwealth in the amount of $5,267.82 and to the county in the sum of $4,571.01. Likewise, the total sum of $2,357.38, heretofore collected by the Commonwealth, should be similarly reduced by the credits allocated to the amounts recoverable by the Commonwealth and the county, respectively, in the sum of $554.67 to each, leaving a net balance collected by the Commonwealth from the estate of $1,248.04. That balance, together with the sum of $861.88 in the guardian's account, totals the sum of $2,123.57, distributable between the Commonwealth and the county on the basis of their net claims of $5,267.82 and $4,571.01, respectively. The respective proportionate shares would be 0.5354 to the Commonwealth and 0.4646 to the county of the total net collected and collectible balance of $2,123.57 or $1,136.96 to the Commonwealth and $986.61 to the county. Since the balance in the hands of the guardian is only $861.88, that sum is awarded to the county, without prejudice to its right to recover the balance of its pro rata share from the funds in the possession of the Commonwealth.

### Order

And now, to wit, December 18, 1944, exceptions 2, 3, 4, and 6 are sustained; exceptions 1 and 5 are dismissed. Counsel for the guardian is directed to prepare a form of decree confirming the account, discharging the guardian, and showing the distribution of the estate, after deduction of proper costs, in accordance with this opinion.