# Funk's Estate

*J. Mettler Pensyl*, for exceptant.

*Richard Henry Klein*, for guardian, accountant.

TROUTMAN, J., April 8, 1946.—This case arises on exceptions filed by the Department of Revenue of the Commonwealth of Pennsylvania, to the first and final account of John Eugene Funk, guardian of George Wilson Funk, a weak-minded person.

On October 31, 1938, John Eugene Funk was appointed guardian of his father, George Wilson Funk, under the provisions of the Act of May 28, 1907, P. L. 292, 50 PS §941, as amended. The ward, George Wilson Funk, was admitted to the Danville State Hospital on December 5, 1938, where he remained as a patient

until January 31, 1940, on which date he was returned to his home. On March 13, 1940, he was returned to the Danville State Hospital where he remained until the date of his death, September 28, 1942. George Wilson Funk was approximately 61 years of age at the time of his admittance to the hospital.

At the time the guardian was appointed, the ward was married to Elizabeth May Funk, who was a blind person. They lived together in Sunbury, Pa. A granddaughter, Betty Leona Funk, then about thirteen years of age, who is a daughter of the guardian, lived with them.

George Wilson Funk, the ward, had three children: John Eugene Funk, the guardian, who is married and resides in Sunbury, Pa.; Daniel B. Funk, of Woodside, Long Island, N. Y., and Mrs. Leona Ward, of New Berlin, Pa., all of whom were of age at the time of the appointment of the guardian. They contributed nothing to the support of the ward and his wife and the depositions do not disclose their financial circumstances except that the guardian, John Eugene Funk, was on relief.

George Wilson Funk was a retired employe of the Pennsylvania Railroad and was possessed of no real or personal property except some household goods and a monthly railroad retirement pension. Upon retirement on April 15, 1938, he received the sum of $75 per month from the retirement board of the Pennsylvania Railroad. Subsequently, this arrangement was changed and upon the return of $635, the railroad retirement board paid the guardian the lump sum of $875.81 on February 6, 1939, and the sum of $92.19 per month thereafter during the lifetime of George Wilson Funk.

Elizabeth May Funk, the wife of George Wilson Funk, owned no real or personal property but did receive a blind pension from the Department of Public Assistance of the Commonwealth of Pennsylvania in

the sum of $30 per month during the period of the guardianship and until her death on June 22, 1943.

On August 31, 1944, a rule was issued on the guardian at the instance of the Commonwealth of Pennsylvania to file an accounting. On March 29, 1945, guardian filed an answer to the rule and an account was filed on that date. On May 5, 1945, the Commonwealth filed exceptions to the first and final account.

The exceptant, Commonwealth of Pennsylvania, is a creditor by virtue of charges for maintenance of the ward at the Danville State Hospital. The total charges claimed by the Commonwealth are $1,223.28. Of this amount, the guardian paid the sum of $534.42, leaving a balance due the Commonwealth of $688.86.

The exceptions of the Commonwealth which were pressed at the argument were those made to items of credit for payments made by the guardian for the benefit of the ward's wife without having obtained authority or leave of court to permit such disbursements. The exceptions were filed specifically to every item of credit claimed by the guardian, excepting the amounts paid to the Danville State Hospital and costs incidental thereto.

The Act of May 28, 1907, P. L. 292, sec. 6, under which this guardian was appointed, 50 PS §961, provides as follows:

"The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania. The court appointing such guardian shall have full power over the same, in directing an allowance for the said ward and for the support and maintenance of his wife, or his or her children, and the education of his or her minor children; and shall enter a decree of sale, mortgaging, leasing, or conveyance upon ground-rent of the real estate, or any part thereof, of the said ward, whenever in the opinion of the court it is neces-

sary for the support and maintenance of the said ward or his family, or the education of his or her minor children, or the payment of his or her debts, . . ."

Under the provisions of section 6 of the Act of May 28, 1907, supra, the court appointing a guardian for an incompetent has full power to direct an allowance for the support and maintenance of the incompetent's wife, and such matter is within the sound discretion of the court of common pleas: Parke's Case, 41 Pa. Superior Ct. 531, In re Henderson, 45 D. & C. 359.

In the instant case, the guardian never petitioned the court requesting authority to make payments for the support and maintenance of his ward's wife, nor did he ask the court to direct an allowance for such support and maintenance. In this respect, the guardian made no effort to comply with the plain provisions of the statute and undertook to substitute his judgment for the judgment of the court in the disbursement of his ward's funds.

Under the provisions of section 6, Act of 1907, supra, the guardian should only pay out funds of his ward upon the direction and approval of the court.

The testimony shows that on several occasions the guardian was advised by a representative of the Department of Revenue to either secure or produce an order of court authorizing him to make payments for the support of his mother. The guardian ignored these requests.

The guardian in this case did not willfully abuse his trust. The difficulty arises from the fact that he did not avail himself of the provisions of the act of assembly and have the court direct a suitable periodical allowance for maintenance and support of the ward's wife. He was of the opinion that his mother should be the first recipient of any funds which came into his hands. In this respect he did not exercise

good judgment, particularly in expending the ward's funds for the maintenance of an entire house for the ward's wife, together with telephone service and other conveniences which were no doubt beyond the means of a family of ordinary income. However, there was an obligation to assist in the maintenance of the ward's wife and if a petition for an allowance for such purposes had been presented to the court in the first instance, a reasonable allowance would have been authorized.

In Gracey's Appeal, 3 Walker 298, 301, the court said:

"The rule is that the Court will allow credit for payments necessary and made in good faith, though without authority, if it be shown that the circumstances were such, that if application had been made to the Court, such authority would have been granted; Sharpe's Estate, 2 Phila. R., 280; Pettitt's Appeal, 3 Wright, 324; Stephen Smith's Appeal, 6 Casey, 397. What I have to consider is, whether under the circumstances as they appeared at the time of the expenditures, I would have authorized them."

The court will allow a guardian credit for payments necessary and made in good faith though without authority if it be shown that the circumstances were such that if application had been made to the court, such authority would have been granted: Commonwealth ex rel. Stanton v. Stanton, 29 Berks 25.

In passing upon the expenditures made by the guardian for the support and maintenance of the ward's wife, in the absence of a prior allowance by the court, the court will consider whether under the circumstances as they appeared at the time of the expenditures, a court would have authorized them, in the exercise of its sound discretion.

The guardian charges himself with having received $4,848.16 during the period of the guardianship.

He is entitled to credit for prothonotary's costs and premiums on his bond, in the sum of $35; for return of payments received from the Pennsylvania Railroad Retirement Fund in the sum of $635; for payments made to the Commonwealth of Pennsylvania for the maintenance of the ward, $534.42; for payment of service charges to the First National Bank of Sunbury in the sum of $20.37 and for payments made during the months of February and March, 1940, less bank service charges, in the sum of $188.54, being the period during which the ward was home on furlough from the Danville State Hospital. The above credits allowed total $1,413.33 which leaves a balance chargeable to the guardian of $3,434.83.

Had the Commonwealth petitioned the court during the life of the ward, the guardian would have been directed to pay for the cost of maintenance of the ward at the Danville State Hospital. The Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781, et seq., provides that when any person is maintained as an inmate of any hospital of the Commonwealth, in whole or in part at the expense of the Commonwealth, "the property or estate of such person shall be liable for such maintenance", and the court of common pleas of the county of the residence of any inmate is given jurisdiction to make an order for the payment of maintenance to the Commonwealth by the trustee, guardian, or other person who has charge of the estate of such inmate. See Yoder's Estate, 341 Pa. 81.

We are of the opinion that there was sufficient income received by the guardian to pay the maintenance costs of the ward at the Danville State Hospital in full and also provide an adequate allowance for the support and maintenance of the ward's wife. The ward's wife was entitled to receive support and maintenance out of the ward's estate, and, as has been previously indi-

cated, if a petition had been presented to the court, a reasonable allowance would have been made. Considering the fact that the wife was receiving $30 per month blind pension, and, taking into consideration the size of the ward's estate and the care which a blind person would necessarily require, we are of the opinion that a monthly allowance of the balance of the ward's monthly pension, after the payment of the cost of the ward's maintenance and costs incidental to the guardianship, would have been a fair and adequate allowance from the estate of the ward for the wife's support and maintenance. This amount, together with the blind pension, provided a monthly income of more than $90, which, during the period of his guardianship, was an adequate amount for the support of the ward's wife.

We will allow the guardian credit for payments made for the support and maintenance of the ward's wife in the sum of $2,745.97, which sum includes credits claimed for payments to the Prudential Insurance Company on account of insurance premiums and to the relief department of the Pennsylvania Railroad Company on account of dues. We will disallow the guardian's claim for credits in excess of the said sum of $2,745.97 plus the sum of $1,413.33 hereinbefore allowed. Accordingly, the guardian, John Eugene Funk, should be surcharged with the sum of $688.86.

Since the ward is dead, this court cannot make an order for the payment of maintenance to the Commonwealth upon the guardian as provided in section 4 of the Act of June 1, 1915, P. L. 661, as amended by the Act of April 25, 1929, P. L. 704, and the claim of the Commonwealth should be presented, not to the guardian, but rather to the administrator of the estate under the jurisdiction of the orphans' court: Frew's Estate, 340 Pa. 89.

*Order*

And now, to wit, April 8, 1946, to the extent indicated in this opinion, the exceptions are sustained; as to anything beyond that, they are dismissed. The guardian, John Eugene Funk, is surcharged with the sum of $688.86, and the balance in the hands of the said guardian, John Eugene Funk, is now declared and decreed to be $688.86.