## McMenamin Estate

*John W. Sheetz, Jr.* and *W. Joseph Harrison, 3rd,* for accountant.

*Edward G. Bauer, Jr.,* City Solicitor and *E. Louis Rosen,* for City of Philadelphia.

SHOYER, J., October 9, 1963.—Winifred McMenamin was adjudicated an incompetent by decree of this court

dated March 22, 1960, and Industrial Trust Company, now Industrial Valley Bank and Trust Company, was appointed guardian of her estate.

Winifred McMenamin is living.

This account was filed for confirmation, principal having been consumed without prior authority therefor having been first obtained. See section 644 of the Incompetents' Estates Act of 1955, (Act of February 28, 1956, P. L. 1154), reenacted and amended by the Act of July 11, 1957, P. L. 794.

The City of Philadephia has presented a claim in the sum of $758.82, being the balance owing for the maintenance and support of the incompetent at Riverview for the period from August 12, 1959, to August 26, 1963. Credits for payments to the city for the major portion of that period are reflected in the account. The claim is directed to be paid. . . .

It appears from the statement of proposed distribution that sometime in August 1963, the incompetent was removed from Riverview to the home of Mrs. Edna Hastings, her sister, in Little Creek, Delaware.

In a separate petition presented to the auditing judge, the accountant requests leave to pay Mrs. Hastings the sum of $272.18 for the incompetent's maintenance and support. This claim is also allowed and directed to be paid.

The separate petition also requests that the sum of $600 be awarded to the accountant, in trust, as a fund to provide for the funeral expenses of the incompetant, pursuant to the provisions of Act No. 77 of June 11, 1963, adding a new section (section 411.1) to the Incompetents' Estates Act of 1955, 50 PS §3411.1, effective September 1, 1963, which provides:

"Trust Fund.—The guardian may, with the approval of the court having jurisdiction of the estate,

create with a corporate fiduciary a trust with a principal not in excess of six hundred dollars ($600). The trust so created shall terminate upon the death of the incompetent and the proceeds thereof shall be used to such a degree as is necessary to pay the funeral expenses of the incompetent. Should the incompetent become competent, the court having jurisdiction of the estate shall have the right to terminate the trust and award the funds so received. During the term of the trust, the corpus shall be exempt from levy, sale, garnishment, attachment or any other process, and shall be unassignable."

This recent addition changes the rule laid down in Yoder's Estate, 341 Pa. 81, which held that the lower court lacked the power to direct the guardian to set aside funds for the incompetent's burial as against the claims of the Commonwealth for the expense of his continued maintenance in Norristown State Hospital. Our Supreme Court did acknowledge merit in the suggestion that there should be reserved from the estate of an unfortunate ward sufficient to bury him and to avoid giving him a pauper's burial. However, the court held that there was no warrant in the law for such an exemption. "To set aside a fund to meet future burial expenses and other emergencies would, in effect, amount to the granting of an exemption. Exemptions are in derogation of the usual course of the law and must be specially allowed by statute": (p. 84).

Prior to the decision in Yoder there was apparently a well established policy throughout the state, approved by governmental agencies and sanctioned by many of the lower courts, of permitting retention of an appropriate amount for burial. See Fiduciary Review, February 1940, p. 3, and cases cited therein.

The present statute fixes the amount which, in the eyes of the legislature, is the maximum to be set aside

in anticipation of the ward's death, and also preserves the fund thus segregated from attachment "or any other process" by creditors. Upon death the proceeds of the fund are to be used only "to such a degree as is necessary to pay the funeral expenses." In order to adhere to this legislative maximum it is desirable to avoid accumulations, hence the trustee will be authorized to expend income earned by the trust fund for the care and maintenance of the incompetent.

Mrs. Hastings has requested that certain series "E" bonds included in the balance shown by the account, which bonds have a face value of $550, and an account value of $482.70, and are registered in the name of Mrs. Winifred McMenamin or Mrs. Edna Hastings, be paid to Mrs. Hastings so that she might, at the time of Mrs. McMenamin's death, pay for her burial expenses out of the proceeds.

The bonds apparently were in the possession of Mrs. McMenamin when she was adjudicated an incompetent, and the bonds were at that time turned over to the guardian. In the absence of proof to the contrary, we assume that the bonds were purchased by Mrs. McMenamin with her own funds and registered by her as stated above. Since the proceeds of the bonds are required for her support and eventual burial expenses, any claim thereto by Mrs. Hastings must be denied, if claimed by her for her own use: cf. Misto Estate, 22 D. & C. 2d 129, 10 Fiduc. Rep. 215; Rodger's Estate, 26 D. & C. 2d 401, 11 Fiduc. Rep. 645; and denied if claimed by Mrs. Hastings as a trust for her sister's eventual funeral expenses because the act referred to clearly provides for a *corporate* fiduciary of such trust funds. This legislative requirement possibly could defeat the well-intentioned purpose of the act, because corporate fiduciaries may deem inadequate the compensation receivable for administering such small

312

trusts. The present accountant is to be commended for its willingness to assume the responsibility of a trustee in the instant case.

The sum of $600 will be awarded to the accountant, in trust, for the anticipated funeral expenses of the incompetent, the income to be expended for the care and maintenance of the incompetent. . . .